[CHAMBERSBURG, OCTOBER 30, 1828.]

## STAMBAUGH *against* YEATES.

### IN ERROR.

After a *Fieri Facias,* levied on land and returned, grain was sown on it; another creditor levied on the grain and sold it, and afterwards the land was sold on a *Venditioni Exponas,* issued on the first *Fieri Facias. Held,* that the creditor who levied on the grain, had the right to hold the proceeds.

WRIT of error to the Court of Common Pleas of *Franklin* county.

*Crawford,* for the plaintiff in error.
*Chambers, contra.*

The opinion of the court was delivered by

HUSTON, J.—It was admitted on the trial of this cause, in the Court of Common Pleas, that *Robert Yeates* had duly obtained a judgment against *John Kyrne* in the Court of Common Pleas of *Franklin* county, and issued a *Fieri Facias* to *August* Term, 1824, which was levied on a tract of land. A *Venditioni Exponas* issued to *November,* 1824; and an *Alias Venditioni Exponas* to *January* Term, 1825, on which the land was sold to *Robert Yeates,* and a deed duly executed by the sheriff. On the 4th of *April,* 1825, *Yeates* entered into possession of the land. But in *March,* 1824, a judgment had been obtained by the administrator of *Wilson,* against *John Kyrne,* before a justice of the peace. Special bail was entered, and when the stay of execution had expired, an execution was taken out and levied in *November,* 1824, on the half of fourteen acres of wheat in the ground, being the share of *John Kyrne,* the landlord. It was sold for fourteen dollars and fifty cents to *Stambaugh.* The proof was, that the grain was put

(Stambaugh *v.* Yeates.)

in by a tenánt, on the shares, on *Kyrne's* land; and that *Kyrne*, the landlord, was to have one-half. Nothing was said at the constable's sale about the sheriff's levy or advertisement. It was growing on the land of *Kyrne*, sold afterwards to *Yeates*, and of which *Yeates* came into possession afterwards on the 4th of *April*, 1825. *Stambaugh* reaped the grain, and *Yeates* hauled it away, and this was an action of trespass against him for so doing.

It may seem strange, that we should now be deciding what is personal, and what real estate, in *Pennsylvania*; what passes to a purchaser at sheriff's sale, and what does not pass.

He who obtains a judgment against the owner of lands in this state, has thereby a right to apply to the laws to sell those lands; and when sold, has a right to the amount of his judgment from the proceeds of the sale; but, his judgment gives him no right to the lands, nor, to a certain extent, any control over them. The debtor, to be sure, cannot sell or lease the land, so as to destroy the creditor's right to the amount of his judgment out of the proceeds; but within this limit, the debtor is still absolute owner. The lands are not locked up; are not to be unproductive. The creditor may take out an execution, and may levy it on the defendant's personal property, (and grain growing is personal property,) alone, or on personal property and on lands. The personal property, including the growing crop, will go to the creditor on whose execution the levy was made; though if there is an elder judgment or mortgage, the proceeds of the land may go to discharge such elder judgment or mortgage; for lands are bound from the entry of a judgment or the recording of a mortgage; personalty only by execution, and from the delivery of it to the officer. If, then, lands, and grain growing, may go to the different creditors, when sold on the same execution, it would seem strange, that the sale of the land carried with it the grain which had been previously sold as personal property on another execution. In this case, the grain was not sown when the *Fieri Facias* was returned; the levy was not on grain, but on land. After the return of the *Fieri Facias*, the grain was sown, levied on, and sold by another creditor on another execution; then came a *Venditioni Exponas* to sell the land, and the purchaser of the land claims what was not bound by his judgment, not comprised in his levy, not in existence at the return of his *Fieri Facias;* and not directed to be sold, nor sold by his *Venditioni Exponas*. But this is not all; he claims what was legally and specifically levied on, and sold, and paid for by another person. Our law is not so absurd as to permit one man to use its process, and sell, and receive purchase money for a debtor's goods, and another to sell and take away the same goods from the first purchaser. That ever such an inconsistency should have been supposed to exist, arises from not distinguishing between the law of *England* and of this country. There, lands are never sold by process of the common law courts; here, they are every day. There, not only lands, but every thing, part of

(Stambaugh *v.* Yeates.)

the freehold, is exempt from levy on a *Fieri Facias;* here, the land, or any of its annual products, is the subject of levy and sale, and may, as has been stated, go different ways, though sold on the same suit and execution.    There, they have no waygoing crop; a new tenant gets all the land, and all growing on the land; here the removing tenant comes back to reap all he sowed. There, the land, and all growing on it, are freehold; here, the land is freehold, and the annual product has, for many purposes, a different name, and is subject to different incidents.

It has been said, the landlord's share is rent, and rent cannot be levied on; and, therefore, *Kyrne's* share of this grain, could not be levied on and sold, and the purchaser got no title to it.    It is easier to see the fallacy of this, than to exhibit this fallacy in words.    A debt due to a person, is a chose in action, and not the subject of levy.    But grain growing, is not a debt, not a chose in action, though it may, by an agreement of the parties, be destined to pay a debt; and being the property of him by whom the debt is due, it is his personal property, and may be levied on and sold.    This grain was levied on for *Kyrne's* debt, and sold.    The purchaser paid for it.    It was his by operation of law.    He has done nothing to forfeit his right to it.    The law made it his, and cannot, without injustice, take it from him; and in this case, does not take it from him.

Tod, J. dissented.

Judgment reversed, and a *venire facias de novo* awarded.